**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PATRICK J. BOLES,**

                **Plaintiff,**          **6:11-cv-522**
                                         **(GLS/TWD)**

       **v.**

**THE COUNTY OF MONTGOMERY**
**et al.,**

                **Defendants.**
_____

**APPEARANCES:**              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Elmer R. Keach, III      ELMER R. KEACH, III, ESQ.
1040 Riverfront Center
P.O. Box 70
Amsterdam, NY 12010

**FOR THE DEFENDANTS:**
_The County of Montgomery,_
_Michael Amato, Jeffrey Smith,_
_Thomas Flickinger_
Office of Theresa J. Puleo       MURRY S. BROWER, ESQ.
P.O. Box 12699
Albany, NY 12212

_Lisa Seymour d/b/a American Lenders_
_Services Company of Glens Falls,_
_Dakota Seymour, Deniz Kana_
Carman, Callahan Law Firm       MICHAEL F. INGHAM, ESQ.
266 Main Street
Farmingdale, NY 11735

**Gary L. Sharpe**
**Chief Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

## I. <u>Introduction</u>

Plaintiff Patrick J. Boles commenced this action pursuant to 42 U.S.C. § 1983, alleging that defendants[1] violated his Fourth and Fourteenth Amendment rights, along with a claim under New York State law, all in connection with the allegedly unlawful repossession of Boles' truck.[2]  (Am. Compl., Dkt. No. 13.)  Before the court are the County and Repo Defendants' motions for summary judgment.  (Dkt. Nos. 32, 38.)  For the reasons that follow, defendants' motions are denied.

---

[1] Defendants include The County of Montgomery, Sheriff Michael Amato, Undersheriff Jeffrey Smith, Road Patrol Sergeant Thomas Flickinger (collectively, "County Defendants"), Lisa Seymour d/b/a American Lenders Services Company of Glens Falls, Dakota Seymour, and Deniz Kana (collectively, the "Repo Defendants").

[2] Boles' New York State claim is for unlawful conversion/violation of the Uniform Commercial Code (UCC).  (Am. Compl. ¶¶ 63-70.)

2

## II. **Background**[3]

On May 6, 2010 at approximately 9:00 P.M., Dakota Seymour (hereinafter "Seymour") and Kana, both employees of Lisa Seymour, owner of American Lenders Services Company of Glens Falls, arrived at Boles' home with a tow truck to attempt to repossess Boles' Ford F-250 pick-up truck (the "Truck") pursuant to a bank order. (County Defs.' Statement of Material Facts (SMF) ¶¶ 1-2, 8, Dkt. No. 32 at 3-9; Repo Defs.' SMF ¶¶ 1-2, Dkt. No. 42; Am. Compl. ¶ 9.) Upon arriving, Seymour and Kana attached Boles' Truck to the tow truck.[4] (Repo Defs.' SMF ¶ 2.) At that time, Boles, who was inside his home, noticed lights in his side yard, thought someone may be trespassing, instructed his mother to call the police, and went outside to investigate. (Pl.'s SMF ¶¶ 1-2, Dkt. No. 49.)

Moving forward from the time Boles went outside to investigate, the

---

[3] The County and Repo Defendants submitted Statements of Material Facts in support of their motions for summary judgment. (Dkt. No. 32 at 3-9; Dkt. No. 42.) Boles properly responded and submitted a Counter-Statement of Material Facts. (Dkt. Nos. 46, 48, 49.) Accordingly, to the extent supported by the record, the background set forth in this section is taken from: (1) the County Defendants' Statement of Material Facts and Boles' responses thereto; (2) the Repo Defendants' Statement of Material Facts and Boles' responses thereto; (3) Boles' Counter-Statement of Material Facts; and (4) the admissible exhibits and evidence submitted by the parties. Unless otherwise noted, the facts are undisputed.

[4] The degree to which the truck was secured is disputed. (County Defs.' SMF ¶ 3; Repo Defs.' SMF ¶¶ 2-3; Pl.'s SMF ¶ 5, Dkt. No. 49.)

facts are largely disputed. Boles claims that, as he was walking toward his Truck, the back of which was attached to the tow truck, Kana "popped up" from behind his Truck and startled him, causing him to make physical contact with Kana for a "split second." (Pl.'s SMF ¶¶ 3, 5; Dkt. No. 45, Attach. 1 at 18.) Defendants claim that, as Boles exited his house, he "pushed" or "physically assaulted" Kana. (County Defs.' SMF ¶ 5; Repo Defs.' SMF ¶ 4.) Boles also claims that he told Kana and Seymour that they could not take his truck because he had made all of the payments, (Pl.'s SMF ¶¶ 6-7), but both Seymour and Kana dispute that Boles ever told them that they could not take his truck, (Dkt. No. 45, Attach. 4 at 26-27; Dkt. No. 45, Attach. 5 at 41-42).

Next, Boles entered his Truck and started the engine. (Pl.'s SMF ¶ 8; County Defs.' SMF ¶ 6; Repo Defs.' SMF ¶ 4.) While Seymour and Kana maintain that Boles then attempted to drive his Truck off the dolly, Boles claims that he never pressed the accelerator. (Pl.'s SMF ¶ 8; County Defs.' SMF ¶¶ 6, 9; Repo Defs.' SMF ¶ 4; Dkt. No. 45, Attach. 5 at 81-82.) Seymour and Kana then returned to their truck, and Seymour called the police and explained that he was trying to repossess Boles' Truck, but that Boles was trying to drive it off the tow truck. (Pl.'s SMF ¶ 9;

4

County Defs.' SMF ¶ 7; Dkt. No. 45, Attach. 20.)

Road Patrol Sergeant Flickinger, after receiving a radio call from dispatch informing him that there were two 911 calls—one stating that someone was trying to take a vehicle and another stating that there was a repossession—arrived on the scene.[5]  (Pl.'s SMF ¶¶ 17-18; Dkt. No. 45, Attach. 22.)  Boles claims that Seymour and Kana were inside their truck when Flickinger arrived, (Pl.'s SMF ¶ 20), but Flickinger claims that they were standing by the front of the tow truck, (County Defs.' SMF ¶ 11).

Kana and Seymour then showed Flickinger a copy of the bank order, which he reviewed.  (Pl.'s SMF ¶ 19; Repo Defs.' SMF ¶ 6.)  Defendants claim that Boles' Truck was running and leaning off the dolly and Boles was upset and yelling.  (County Defs.' SMF ¶ 13-14.)  Boles, however, maintains that, at the time Flickinger arrived, his Truck was in park and securely on the dolly, he was not attempting to drive, Kana and Seymour were safely inside their truck, his parents were not near the Truck, and he was calm.  (Pl.'s SMF ¶ 20-23; Dkt. No. 45, Attach. 1 at 41; Dkt. No. 45, Attach. 4 at 46-47.)

---

[5] Flickinger claims that radio dispatch told him that there was an altercation or an assault at the property.  (County Defs.' SMF ¶¶ 10, 20; Dkt. No. 45, Attach. 2 at 22.)

Flickinger then approached Boles, who was still sitting in his Truck. (Pl.'s SMF ¶¶ 21-22.)  Flickinger ordered Boles to exit the Truck, but Boles refused.[6]  (County Defs.' SMF ¶ 15; Pl.'s SMF ¶ 38.)  After Boles refused to exit, Flickinger pulled him out of the Truck.  (County Defs.' SMF ¶ 15; Repo Defs.' SMF ¶ 6; Pl.'s SMF ¶ 41.)  Once Boles was out of the Truck, the two continued to scuffle, but Flickinger ultimately released Boles.  (Pl.'s SMF ¶¶ 44-45; County Defs.' SMF ¶ 16; Repo Defs.' SMF ¶ 6.)  At this point, a second 911 call was placed.[7]  (County Defs.' SMF ¶ 17; Pl.'s SMF ¶ 42; Repo Defs.' SMF ¶ 6.)  Boles then reentered the Truck.  (Pl.'s SMF ¶¶ 45-46; County Defs.' SMF ¶ 17.)  Boles claims that he asked Flickinger if he could wait inside of the Truck because he was barefoot, and that Flickinger allowed him to reenter the Truck, but then quickly changed his mind and pulled Boles out of the Truck a second time.  (Pl.'s SMF ¶¶ 45-46; County Defs.' SMF ¶ 17.)

Additional officers then arrived on the scene, including Officer Leon

_____

[6] Boles also maintains that he told Flickinger that he had made all of the payments on the Truck and that he objected to the repossession, (Pl.'s SMF ¶ 39), but Flickinger disputes these facts, (Dkt. No. 45, Attach. 2 at 65-66).

[7] Although the County Defendants claim that Flickinger called for backup, both Boles and the Repo Defendants claim that Seymour placed the second call.  (County Defs.' SMF ¶ 17; Pl.'s SMF ¶ 42; Repo Defs.' SMF ¶ 6.)

Pratt, from the City of Amsterdam Police Department, and Deputy Theresa Pingitore, of the Montgomery County Sheriff's Department. (County Defs.' SMF ¶ 18; Pl.'s SMF ¶ 47; Dkt. No. 45, Attach. 7 at 11.) Pratt ordered Boles to cooperate and threatened to use his taser on him if he refused. (County Defs.' SMF ¶ 18; Pl.'s SMF ¶ 47.) Flickinger then placed Boles in handcuffs and placed him in his patrol car. (County Defs.' SMF ¶ 22; Pl.'s SMF ¶ 48.) Once Boles was taken away, Seymour and Kana removed the Truck, completing the repossession. (Repo Defs.' SMF ¶ 7.)

Boles was charged with obstructing governmental administration (OGA) in the second degree and resisting arrest. (County Defs.' SMF ¶ 22; Pl.'s SMF ¶ 52); *see* N.Y. Penal Law §§ 195.05, 205.30. In the OGA Criminal Information, Flickinger wrote that Boles obstructed governmental administration by "preventing public servant . . . Flickinger . . . from performing an official function of a car repossession." (Dkt. No. 45, Attach. 10 at 1.) All of the charges against Boles were ultimately dismissed. (Pl.'s SMF ¶ 58.)

### III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the

7

standard, the court refers the parties to its decision in *Wagner v. Swarts*,

827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v.*

*Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. <u>Discussion</u>

Before delving into the specifics of the parties' arguments, a brief

background on New York's self-help repossession is warranted.  Pursuant

to N.Y. U.C.C. § 9-609, "[a]fter default, a secured party . . . may take

possession of the collateral . . . pursuant to judicial process; or . . . without

judicial process, if it proceeds without breach of the peace."  Thus, "where

repossession cannot be accomplished without a breach of the peace, a

retaking must be effected by legal process."  *Barrett v. Harwood*, 189 F.3d

297, 300 (2d Cir. 1999).

Here, Boles contends that Flickinger's involvement in the

repossession converted the private repossession into state action.  (Dkt.

No. 50 at 6-10.)  Boles maintains that the right to repossess the Truck

without judicial process ended when he objected to the repossession,

thereby disturbing the peace.  (Am. Compl. ¶¶ 49-55, 63-70.)   According

to Boles, Flickinger, acting under color of state law, aided the Repo

Defendants in the unlawful repossession through his conduct and arrest.

(*Id.*)  Specifically, Boles claims that Flickinger and the Repo Defendants violated his Fourteenth Amendment due process rights by unlawfully seizing his property.  (*Id.* ¶¶ 49-55.)  Boles also brings Fourth Amendment false arrest, malicious prosecution, and excessive force claims against Flickinger, (*id.* ¶¶ 30-35, 36-42, 43-48), and a *Monell* claim against Amato, Smith, and the County of Montgomery for failure to implement municipal policies to avoid constitutional deprivations and failure to train and supervise employees, (*id.* ¶¶ 56-62).  Finally, Boles claims that the Repo Defendants violated New York State's UCC by unlawfully repossessing his Truck.  (*Id.* ¶¶ 63-70.)

Defendants contend that they are entitled to summary judgment. (Dkt. Nos. 34, 40.)  As more fully discussed below, the court concludes that Boles has established genuine issues of material fact with respect to each claim, rendering summary judgment inappropriate.

### A.    Claims Against Flickinger

#### 1.    Fourteenth Amendment

Plaintiffs have "a constitutional right 'not to have property in which [they] enjoyed a lawful possessory interest [repossessed] by state action in violation of the constitution.'"  *Barrett*, 189 F.3d at 301 (quoting *Haverstick*

*Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir.1994)).

"The Constitution requires notice and a prior hearing before a state can assist a secured creditor in the repossession of a debtor's property." *Id.* To succeed on his claim, Boles must "show that a person acting under color of any state statute, regulation, custom or usage deprived plaintiff of a right secured by the Constitution." *Id.* Flickinger contends that he is entitled to summary judgment because he was not involved in the repossession and, therefore, there was no state action. (Dkt. No. 34 at 5-7.)

There is no clear point at which police action in connection with a repossession becomes "state action." *Barrett*, 189 F.3d at 301-02. While mere police presence during a repossession is insufficient, "the crucial question is whether the police officer was (1) present simply to stand by in case there was a breach of the peace, or (2) taking an active role that either affirmatively assisted in the repossession over the debtor's objection or intentionally intimidated the debtor so as to prevent him from exercising his legal right to object to the repossession." *Id.* at 301-03.

Here, as an initial matter, there is a question of fact as to why Flickinger arrived on the scene in the first place. Flickinger contends that

he responded to a radio dispatch informing him of an assault or altercation, (County Defs.' SMF ¶¶ 10, 20; Dkt. No. 45, Attach. 2 at 22), while Boles claims that Flickinger was told that there was a repossession, (Pl.'s SMF ¶ 17). Additionally, the record shows that it was Seymour, the repossessor, who placed at least one phone call, and possibly two calls, to the police. (Pl.'s SMF ¶¶ 9, 42; County Defs.' SMF ¶ 17; Repo Defs.' SMF ¶ 6; Dkt. No. 45, Attach. 20.) If Flickinger was called to the scene by Seymour, arrived at the scene shortly after Seymour and Kana, and, once on the scene, conferred with Seymour and Kana and reviewed the bank order, this "could give 'the repossession a cachet of legality' and have 'the effect of intimidating [the debtor] into not exercising his right to resist, thus facilitating the repossession.'" *Marcus v. McCollum*, 394 F.3d 813, 819 (10th Cir. 2004) (quoting *Booker v. City of Atlanta*, 776 F.2d 272, 274 (11th Cir. 1985)).

Further, despite the questions surrounding Flickinger's initial reasons for arriving at the scene, there are additional questions of fact regarding Boles' behavior once Flickinger arrived and whether there were legitimate safety concerns justifying Flickinger's actions, or whether Flickinger was actively aiding in the repossession. (*Compare* County Defs.' SMF ¶¶ 13-

11

14, *with* Pl.'s SMF ¶¶ 20-23, *and* Dkt. No. 45, Attach. 1 at 41.)  As noted,

there is conflicting testimony.  On the one hand, portions of the record

suggest that: (1) Boles may have objected to the repossession, (Pl.'s SMF

¶¶ 6-7, 9); (2) upon arriving, Flickinger first reviewed a copy of the bank

order and made sure that "everything was good," (Dkt. No. 45, Attach. 4 at

32-34), but never told Boles or the Repo Defendants that he could not

participate in the repossession, (Dkt. No. 45, Attach. 4 at 34), (3) Flickinger

pulled Boles out of his Truck and restrained him after Boles refused to exit,

(County Defs.' SMF ¶¶ 15, 17; Repo Defs.' SMF ¶ 6; Pl.'s SMF ¶¶ 41, 45-

46); and (4) at the end of the incident, Flickinger stated in the OGA

Criminal Information that Boles "prevent[ed] . . . Flickinger . . . from

performing an official function of a car repossession," (Dkt. No. 45, Attach.

10 at 1).  *See Harris v. City of Roseburg*, 664 F.2d 1121 (9th Cir. 1981)

("[T]here may be a deprivation within the meaning of § 1983 . . . when the

officer assists in effectuating a repossession over the objection of a debtor

or so intimidates a debtor as to cause him to refrain from exercising his

legal right to resist a repossession."); *see also Barrett*, 189 F.3d at 303

("[A]n officer might . . . be liable if the evidence showed . . . that the officer

came on the scene at the request of the repossessor and said to the

debtor, 'don't interfere with this repossession.'").

On the other hand, however, Flickinger claims that he acted appropriately to prevent injury to person and property. (Dkt. No. 34 at 5-6.) This conflicting testimony creates material issues of fact preventing summary judgment, and it is for a jury to determine whether Flickinger assisted in the repossession. *See Pollock v. Daniels*, No. 3:07-cv0637, 2009 WL 261232, at *5 (N.D.N.Y. Feb. 4, 2009). Accordingly, Flickinger is not entitled to summary judgment on Boles' Fourteenth Amendment claim.

### 2. *Fourth Amendment Claims*[8]

#### i. False Arrest

Flickinger next argues that Boles' false arrest claims should be dismissed because he had probable cause to arrest Boles. (Dkt. No. 34 at 7-9.) To establish a false arrest claim under § 1983, a plaintiff must show that: "(1) [defendants] intended to confine the plaintiff[;] (2) the plaintiff was conscious of the confinement[;] (3) the plaintiff did not consent to the confinement[;] and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *see Donovan v.*

---

[8] Boles also brings a claim for excessive force against Flickinger. (Am. Compl. ¶¶ 43-48.) The parties do not address that claim in their papers.

*Briggs*, 250 F. Supp. 2d 242, 249 (W.D.N.Y. 2003). Here, the only dispute centers on the last element—whether Boles' arrest for OGA and resisting arrest were supported by probable cause and hence "otherwise privileged." (Dkt. No. 34 at 7-9; Dkt. No. 50 at 10-14.)

"Probable cause exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Savino v. City of N.Y*, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation marks and citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted). Importantly though, an "officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Id.* at 153 (citing, inter alia, *Whren v. United States*, 517 U.S. 806, 812-13 (1996)). Instead, an arrest is lawful "as long as the circumstances, viewed objectively, justify that action." *Id.* (internal quotation marks and citation omitted).

Here, as discussed above, there are questions of fact with respect to whether Flickinger was engaged in authorized conduct at the time of Boles'

14

arrest, or whether he was unlawfully aiding a private repossession.  (*See supra* Part IV.A.1); *Barrett*, 189 F.3d at 302.  Flickinger claims that the basis for the arrest was that Boles, by refusing to exit the Truck, "was clearly interfering with [his] attempt to investigate a possible destruction of property in the future and the destruction he observed when he arrived on scene and the assault."  (Dkt. No. 34 at 8-9.)  Boles, however, maintains that, at the time Flickinger arrived, his Truck was in park and securely on the dolly, he was not attempting to drive, Kana and Seymour were safely inside their truck, his parents were not near the Truck, and his demeanor was calm.[9]  (Pl.'s SMF ¶¶ 20-23; Dkt. No. 45, Attach. 1 at 41; Dkt. No. 45, Attach. 4 at 46-47.)  Questions of fact, therefore, preclude summary judgment.

Finally, with respect to Boles' resisting arrest charge, "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to

---

[9] The court is cognizant that an assessment of "[w]hether probable cause existed for the charge actually invoked by the arresting officer at the time of the arrest is irrelevant" and the County Defendants should "prevail if there was probable cause to arrest [Boles] for any single offense."  *Ackerson v. City of White Plains,* 702 F.3d 15, 20 (2d Cir. 2012) (internal quotation marks and citations omitted).  However, the court cannot ignore that in the OGA Criminal Information, Flickinger stated that Boles obstructed governmental administration by "preventing . . . Flickinger . . . from performing an official function of a car repossession."  (Dkt. No. 45, Attach. 10 at 1.)  Although Flickinger now claims that this was an error, (Dkt. No. 34 at 7; Dkt. No. 45, Attach. 2 at 39-41), it is not for the court to make this type of credibility assessment at this juncture.  *See Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997).

15

prevent a police officer . . . from an effecting an *authorized arrest*." N.Y.

Penal Law § 205.30 (emphasis added). Here, the resisting arrest charge

arose from Flickinger's attempts to take Boles into custody on the OGA

charge. (Dkt. No. 45, Attach. 2 at 86-87.) Because, as discussed above,

"a genuine dispute exists as to whether the [OGA] arrest was authorized at

its initiation, . . . genuine issues of material fact preclude this [c]ourt from

concluding, as a matter of law, that [Boles'] arrest was authorized at the

time [he] resisted it." *Jackson v. City of N.Y.*, 939 F. Supp. 2d 235, 252

(E.D.N.Y. 2013). Accordingly, Flickinger is not entitled to summary

judgment on the false arrest claim.

> ii.    Malicious Prosecution

Flickinger next argues that Boles' malicious prosecution claim must

be dismissed. (Dkt. No. 34 at 9-11.) To prevail on a claim of malicious

prosecution, four elements must be shown: (1) the defendant initiated a

prosecution against plaintiff, (2) without probable cause to believe the

proceeding can succeed, (3) the proceeding was begun with malice and,

(4) the matter terminated in plaintiff's favor." *Ricciuti v. N.Y.C. Transit

Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

Here, Flickinger argues that this claim must fail because probable

cause existed and because Boles has not proven malice. (Dkt. No. 34 at 9-11.)  With respect to the probable cause element, although "[t]he probable cause determination relevant to a malicious prosecution claim differs from that relevant to a false arrest claim, . . . a lack of probable cause to believe the plaintiff committed the crime in question necessarily entails a lack of probable cause to commence a proceeding against him or her."  *Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000).  Further, while, for a malicious prosecution claim, probable cause is measured at the time of the arraignment, rather than the arrest, *see id.*, this distinction is of no moment here.  Indeed, the record does not show, and the parties do not argue, that any additional evidence was discovered between Boles' arrest and the commencement of judicial proceedings against him.  *See id.* Therefore, for the same reasons that the court found questions of fact with respect to Boles' false arrest claims, the court finds questions of fact with respect to Boles' malicious prosecution claims.  Finally, regarding the malice element, the Second Circuit has noted that "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment."  *Ricciuti*, 124 F.3d at 131.  Accordingly, Flickinger is not entitled to summary judgment on Boles' malicious prosecution claim.

### iii. Qualified Immunity

Finally, Flickinger argues that he is entitled to qualified immunity. (Dkt. No. 34 at 12-13.) "A government official is entitled to qualified immunity for his actions unless his conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Rivers v. Fischer*, 390 F. App'x 22, 23 (2d Cir. 2010). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quoting *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)).

Here, at all relevant times, it was clearly established that a deprivation of property is actionable under 42 U.S.C. § 1983. *Pollock*, 2009 WL 261232, at *6. It also was clearly established that an unlawful repossession can amount to state action actionable under § 1983. *See Barrett*, 189 F.3d at 302; *Pollock*, 2009 WL 261232, at *6. As discussed above, there are questions of fact concerning the extent of Flickinger's involvement in the repossession and, thus, whether he is entitled to

qualified immunity.  *See Marcus*, 394 F.3d at 824; *Pollock*, 2009 WL 261232, at *6.

**B.**  ***Monell* Claim Against the County, Amato, and Smith**

The County Defendants argue that Boles' *Monell* claim must be dismissed because Boles failed to show that the County had an unconstitutional policy, practice, or custom in place.  (Dkt. No. 34 at 11-12.)  Boles counters that he has a valid *Monell* claim against the remaining County Defendants due to their failure to train and supervise deputies on the law of repossession and their frequent, unlawful involvement in private repossessions.  (Dkt. No. 50 at 19-21.)  Because Boles has demonstrated a question of fact as to whether an unconstitutional policy was in place, summary judgment is inappropriate.

A municipality may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).  To establish a municipal policy or custom, a plaintiff may allege, among other things, "a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the

19

rights of those who come in contact with the municipal employees."
*Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006), *aff'd*,
232 F. App'x 26 (2d Cir. 2007) (citation omitted).

To show that a municipality's failure to train or supervise constitutes
deliberate indifference, three requirements must be met. *See Walker v.
City of N.Y.*, 974 F.2d 293, 297 (2d Cir. 1992). First, the municipality's
policy maker must know "to a moral certainty that [his or] her employees
will confront a given situation." *Id.* (internal quotation marks and citation
omitted). Second, either the situation must present the employee with the
sort of difficult decision that training or supervision would ameliorate or
there is "a history of employees mishandling the situation." *Id.* Finally, it
must be shown that the "wrong choice by the city employee will frequently
cause the deprivation of a citizen's constitutional rights." *Id.* at 298.
Furthermore, "the simple recitation that there was a failure to train
municipal employees does not suffice to allege that a municipal custom or
policy caused the plaintiff's injury." *Dwares v. City of N.Y.*, 985 F.2d 94,
100 (2d Cir. 1993). Indeed, "[a] single incident alleged in a complaint,
especially if it involved only actors below the policymaking level, generally
will not suffice to raise an inference of the existence of a custom or policy."

*Id.*

Because there are questions as to whether there was ever any training regarding repossessions and whether there is a history of officers mishandling repossessions, the court is satisfied that Boles' *Monell* claim survives summary judgment.  Accordingly, summary judgment on the County Defendants' motion regarding Boles' *Monell* claim is denied.

**C.**     **Claims Against the Repo Defendants**

*1.      Fourteenth Amendment*

The Repo Defendants argue that Boles' Fourteenth Amendment claim must be dismissed because the private repossession did not rise to the level of state action.  (Dkt. No. 40 at 3-7.)  Boles contends that the Repo Defendants acted under the color of state law because they acted in concert with Flickinger.  (Dkt. No. 50 at 15-17.)  Again, the court concludes that there are questions of fact with respect to whether the Repo Defendants acted under the color of state law, and summary judgment is inappropriate.

"A private person—not a government official—acts under color of state law for purposes of § 1983 when 'he has acted together with or has obtained significant aid from state officials' or because his conduct is

21

otherwise chargeable to the state." *Barrett*, 189 F.3d at 304 (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)). Whether a private party acts under color of law is a fact-bound inquiry; summary judgment is appropriate only if there is no evidence to support a state actor conclusion. *See Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 271 n.1 (2d Cir. 1999).

Here, the Repo Defendants contend that they had taken possession of the Truck prior to Flickinger even arriving on the scene and prior to the altercation, which, they claim, caused Boles' arrest, and that they therefore could not have acted in concert with Flickinger in the repossession. (Dkt. No. 40 at 6-7.) Boles, however, maintains that only after Flickinger arrived were Seymour and Kana able to tow Boles' Truck off his private property, and that but for Flickinger's involvement, Boles "would have continued to legally resist the repossession and would not have permitted" Kana and Seymour to take the Truck away. (Dkt. No. 50 at 16, 18-19.)

This factual dispute begs the question of when a repossession is complete. A repossession has been completed "[o]nce a repossession agent has gained sufficient dominion over collateral to control it." *Clark v. Auto Recovery Bureau Conn., Inc.*, 889 F. Supp. 543, 547 (D. Conn. 1994)

22

(quoting *James v. Ford Motor Credit Co.*, 842 F. Supp. 1202, 1209 (D. Minn. 1994)) (internal quotation marks omitted). Simply put, questions of fact remain, and the Repo Defendants' motion is denied.

Accordingly, it is for the jury, and not the court, to decide whether Seymour and Kana acted in concert with Flickinger, such that their private action was converted to state action.

2. *New York State Conversion and Violation of UCC*

Finally, the Repo Defendants argue that Boles' New York State UCC claim must be dismissed because there was no breach of the peace. (Dkt. No. 40 at 8-10.) Specifically, the Repo Defendants contend that the repossession was effectuated prior to Flickinger arriving on the scene, and only after the Truck was attached to the dolly did Boles demonstrate behavior that made Seymour and Kana feel endangered, which necessitated police intervention. (*Id.* at 9-10.)

As discussed above, *see supra* Part IV, "a secured party . . . may take possession of the collateral . . . without judicial process, if it proceeds without breach of the peace." N.Y. U.C.C. § 9-609. Also as noted above, *see supra* Part IV.C.1, it is not clear when the repossession was complete. Nevertheless, the issue remains whether a breach of the peace occurred.

It is clear that a mere verbal objection to the removal of property constitutes a breach of the peace. *See generally Hensley v. Gassman*, 693 F.3d 681, 689-90 (6th Cir. 2012) ("[A]n objection, particularly when it is accompanied by physical obstruction, is the debtor's most powerful (and lawful) tool in fending off an improper repossession because it constitutes a breach of the peace requiring the creditor to abandon his efforts to repossess."); 4 James J. White & Robert S. Summers, Uniform Commercial Code § 34–8 at 447 (6th ed. 2010) ("The debtor's opposition, however slight and even if merely oral, normally makes any entry or seizure a breach of the peace."). Here, while the parties do not dispute that Boles tried to physically prevent Seymour and Kana from taking his Truck, the parties dispute whether he did so prior to the repossession being completed and they dispute whether Boles actually verbally objected to the repossession. (Pl.'s SMF ¶¶ 6-7, 39, *with* Dkt. No. 45, Attach. 2 at 65-66, Dkt. No. 45, Attach. 4 at 26-27, *and* Dkt. No. 45, Attach. 5 at 41-42.) Because "choices between conflicting versions of events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment," *Fischl*, 128 F.3d at 55, the court declines to resolve this factual dispute at this juncture.

Accordingly, the Repo Defendants' motion for summary judgment is denied.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the County Defendants' motion for summary judgment (Dkt. No. 32) is **DENIED**; and it is further

**ORDERED** that the Repo Defendants' motion for summary judgment (Dkt. No. 38) is **DENIED**; and it is further

**ORDERED** that this case is deemed trial ready and the court, in due course, shall issue a trial scheduling order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 13, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court